May it please the Court, I am Ron Spritzer. I appear in this case on behalf of the appellants, the United States and Spencer Abraham, Secretary of Energy. With the Court's permission, may I reserve five minutes for a rebuttal? It's high. Okay, I'll do my best. As the Court is no doubt aware from reviewing the record, this case, the United States government for many years generated reprocessing waste in the process of producing radioactive isotopes used in nuclear weapons. This presents a problem which the Department of Energy has devoted many years and will continue to devote many years to attempting to solve. The longstanding approach the Department has adopted is to use risk-based criteria to distinguish those waste streams that require isolation in a geologic repository from those which do not. Those risk-based criteria were memorialized in Order 435.1, issued in 1999, which set forth general criteria and procedures to be used in making those types of evaluations, that is, evaluating particular waste streams to determine whether they require disposal in a geologic repository. The District Court, by striking down the evaluation process, has brought that effort to a halt. We believe the District Court's ruling is wrong for several reasons. First of all, we believe the order was not right for review. As I've said, the Waste Incidental to Reprocessing criteria, the WIR criteria, as we referred to them in the brief, provide general guidelines and a process for making waste management decisions, but they do not make specific waste management decisions. That is, they do not classify by themselves, by their own force, they do not classify any particular waste as either high-level waste or waste incidental to reprocessing. And the District Court appears to have recognized that the order by itself does not make such determinations. The District Court stated, and this is page 7 of its August 2002 order, page 51 of our excerpts of record, plaintiffs have acknowledged that the defendants have yet to apply the WIR process found in Order 435.1 and reclassify high-level waste at the three facilities as low-level waste for purposes of disposal. See Plaintiff's Complaint, paragraph 40, that's in footnote 4 of the District Court's decision. What concerns me about DOE's position here is the statement contained in the opening brief, and let me just read from it, page 19, the practical reality is that a WIR determination is likely, and I underscore the word likely, to be publicly disclosed by state regulatory officials and through the environmental review process well before implementation. And I'm told by the word likely because it suggests something less than certain. Well, that's maybe the rightness question, because when is the appropriate time to challenge something? I can understand the argument that says, look, if there's no way this goes anyplace in a particular situation without it being challengeable then, then this isn't the right time. But if you can't tell me that the application will be surely challengeable, then what's inappropriate about challenging at this stage? Well, it certainly is challengeable, Your Honor. But if they don't know about it, then it's not going to be challenged. Because it's theoretically challengeable. Well, it's theoretically and it's practically challengeable. Let me make two points in response to that. First of all, the plaintiffs have said, and this appears on page 18 of their brief, in ICALEX, bold, this is an as-applied challenge. That is, they say they are challenging the application of the criteria to the decisions they anticipate DOE making at 239, approximately, tanks that are located, waste disposal tanks, that are located at the three sites. An as-applied challenge, as a matter of law under the APA, cannot be brought until it's final. So my first response to Your Honor's question is, with all due respect, I believe the practical limitations cannot get around the APA's requirement of final agency action. In fact, I not only believe it, I think that is what Supreme Court precedent mandates, particularly the Lujan case, Lujan v. National Wildlife Federation, which rejected this kind of broad challenge to an agency program, which is really what they are doing here. They are basically challenging, by saying we are challenging the decisions they anticipate DOE making at these 239 tanks, they are challenging an ongoing agency program, not a final agency action. So my first response to Your Honor's question is, with all due respect, I think the Court cannot entertain the challenge absent final agency action, even if there might be some practical difficulty. But Your Honor is correct. I cannot stand here in good faith and tell the Court that I know to an absolute certainty that these will be disclosed in advance, that the language we used in the brief was deliberate because we didn't want to mislead the Court. We do think it is highly likely that they will, in fact, have notice. The States are here, or they are represented, and I understand they intend to participate in the argument. They may be able to answer that question. But our understanding is the States do, first of all, the States themselves will have notice. I think that is clear because these WI are determinations that each of the three sites will be submitted to a state regulatory agency. Doesn't the government want to have a decision on this as well as, I mean, what's the point of having this question hanging over the whole process, and then you, government makes plans, and, you know, even if you don't sort of take actual action, there's a lot of resources that get committed to a program like this. I mean, I realize you have to argue the ripeness argument, but isn't it, as a practical matter, wouldn't you really rather know now? I suppose in any ripeness question, there's some pluses and minuses, but one fundamental problem we have with this case, we're being asked here to defend, to quote what the Second that we cited in our brief, we're basically being asked to defend a parade of horribles. Here, all the terrible things the government's going to do if it's allowed to proceed with this program. Well, there are different kinds of arguments. One of them arguments is that this is all defense waste and excluded from the statute, whatever it's called, one of the NWPA. Thank you. NWPA. It's all — excuse me, Your Honor, I didn't quite understand. Did you say excluded from the NWPA? Yes. I'm not sure that that's — That's one argument. I'm not sure that that's the way I understand their argument. But in any event, if Your Honor is saying it's a general argument — No, your argument. Basically saying, suppose you win on the argument that this — that the statute doesn't apply here, maybe that's news you'd like to get now. I can't deny that, Your Honor. On the other hand, I think the fundamental is — Well, not just that you would like to get now, but it's not particularly fact-specific, unlike the other stuff, which, if the NWPA applies, you now have to deal with specific levels and — Yeah. There are factual components to the second legal analysis that go on to the first. The first one is just a straight legal question — If Your Honor is saying — Which may be more right than the one that is fraught with all sorts of factual uncertainties. Okay. If I understand what Your Honor is saying, the second issue being the claim — or the issue of whether the Nuclear Waste Policy Act, in fact, mandates disposal of all high-level waste in a geologic repository. I would agree that sounds more like a purely legal question than most of the other issues they raise, which do depend on various claims about what the government is likely to do and what the environmental effect of its actions are likely to be. Notwithstanding that, Your Honor, I think there are two points that need to be made. Well, first of all, just a disagreement with the government about a legal theory, it seems to me, is not enough to make a case right. It may be, as you have suggested, that it would be — It is more than a hypothetical legal theory. The government plans to devote resources and take actions and commit policies based upon its understanding of the law. And it's not just its understanding of the law in a theoretical sense. It is actually encapsulated in this thing, 435.1, which calls an order. So it is more than a theoretical opinion. This is — the government is about to set off on a path and has cut an order that gives it a framework and asserts authority to do it. Right. Well, let me clarify two points, Your Honor. First of all, in order — order 435.1, or at least the challenge portions that are at issue here, deal with the criteria the Department would use to classify the waste. And their arguments to that, it seems to me, are clearly not right. They go to factional issues, site-specific issues, and there are no final agency decisions making those decisions. So it's difficult for me to separate that — to separate a legal issue out and say, you can just decide this in the abstract. As a — the government's intention, as things stand now, is for waste that meet the WIR criterion that can be managed as low-level or transuranic waste, they will be managed as such, not sent to a geologic repository under the Nuclear Waste Policy Act. So the question whether — whether if there were waste that — whether the government is required to send other waste that — that it acknowledges are high-level waste to a geologic repository, it really becomes an academic dispute, it seems to me, if the criteria we've used for distinguishing between high-level and other types of waste are — are valid. Counsel, the high-level waste argument that — that seems to be floating in the breeze just puzzles me completely. The — the order itself and the manual make it clear that it will be just at least clear to me, it looks like they say, it's going to be disposed of in accordance with the Act. You seem to be arguing we don't have to pay any attention to the NWPA, we can just do whatever we want as part of our management. I don't — No, that's — I don't see that in the order that's being attacked. I get that emanation from the — from the stuff in your brief, which is an interesting, might be DOA's position or maybe just an interesting lawyer argument, but I don't get that from what I'm seeing here, what's being attacked, which is the order, which says that it shall be disposed of in accordance with that Act. Well, the order — You can explain. I think the argument — hopefully this will be responsive to Your Honor's question as I understand it. The order — yeah, that's correct. The order says dispose of the stuff in accordance with the law. If the court says the law is you have to send high-level waste to a geologic repository no matter what, that wouldn't make the order invalid. That simply would be the court's interpretation of what the law requires us to do with high-level waste. I mean, the way we got into this issue — as you know, this court — this case was previously before this court, which ruled basically that the Nuclear Waste Policy Act deals with geologic repositories. Our authority to manage waste at these defense facilities, on the other hand, comes under the Atomic Energy Act and its successor statute. When we returned to the district court, the complaint, as it was framed by the plaintiffs, said the Nuclear Waste Policy Act requires that every — really, every last molecule, as far as I understand their position, has to go to a geologic repository even if DOE and the exercise of — can, for example, obtain a license from the Nuclear Regulatory Commission under Section 2 of the ERA, the Energy Reorganization Act, to manage it on site. We disputed that. So the issue, I don't think, really, ultimately, of whether there is a requirement to dispose of all high-level waste in a geologic repository goes to the validity of the order. It's more an issue that was raised by the complaint. And let me respond to Your Honor's claim that we're saying we can do whatever we want with nuclear waste. That's not really — with all due respect, that's not an accurate statement of our position. In fact, we responded to that in a brief and said, while the district court said we were claiming unfettered discretion, we were claiming nothing of the sort. Their — DOE has the authority under 2121 — 42 U.S.C. 2121-83 to manage the disposal of defense waste at national defense sites. That authority provides for us to provide for the safe disposal of waste. It's certainly not a claim of unfettered discretion or that we can do whatever we want. A party who disagrees with a waste management decision could challenge a final agency action under the APA that it is not consistent with our duty under the Atomic Energy Act to provide for the safe disposal of waste. What we are saying is Congress, when it provided for geologic repositories in the Nuclear Waste Policy Act — that is, a process for developing a geologic repository — was not doing away with, was not repealing — certainly didn't repeal it expressly, and we don't believe it can be read to repeal it by implication either — either DOE's authority under 42 U.S.C. 2121-83 or the NRC's authority to license alternative disposal facilities. In fact, unlike the usual case of repeal by implication, where the Court looks in the statute to see whether there's any indication, clear indication that Congress intended to do that, here we have a clear indication in two distinct provisions that we cite in our brief that Congress didn't intend to do that, that Congress, in fact, expressly stated it was reserving DOE's authority to manage defense nuclear waste at DOE facilities, and we think management necessarily includes to manage the disposal of such waste, and that it was preserving or was not altering the NRC's licensing authorities. As my time is expiring, if I'm going to have five minutes for rebuttal, let me at least say something about the criteria themselves. The District Court's ruling — and this is assuming, of course, that the Court finds the case right and concludes that the Nuclear Waste Policy Act does indeed in some way supersede the Department's authority under the Atomic Energy Act — we submit there are two notable aspects of the Nuclear Waste Policy Act's definition of high-level waste. First, it makes clear that the Department may indeed take into account the hazard, that is, the risk of the waste. Second, the definition is sufficiently broad, referring, for example, to sufficient concentrations of radionuclides, referring to the need for geologic isolation, referring to highly radioactive waste, without defining those terms, that the definition clearly makes an implied delegation to the agency to fill in the gaps, to explain what are sufficient concentrations. That's what the criteria that are being challenged, the WIR criteria, are intended to do. They provide a reasonable means for the agency to distinguish those types of waste that require criminal isolation and those that do not. As my time is just about out, let me make one central point about our argument on why the criteria are valid. The heart of that process, as we've explained in our brief, are the performance objectives, the DOE must meet for any waste. These are health-based criteria, and it's significant to point out that plaintiffs did not claim, and the District Court certainly did not hold, that the performance objectives are inadequate to protect public health. So we have here a case in which the Department has adopted as a central and essential part of its criteria for distinguishing between high-level waste on the one hand and low-level or transuranic waste on the other, health-based performance objectives used for many years by the NRC, not, as far as I've been able to tell from the District Court brief, challenged and in any event certainly not invalidated or found suspect in any way by the District Court. That, combined with the arguments we've made in our brief, I think, show that the criteria, if the Court does reach the issue, are valid. Thank you. Thank you. We'll hear from the sign. Good morning, and may it please the Court. My name is Jeffrey Fettis. And I'm here on behalf of the appellees. This is a straightforward case of statutory construction. And the District Court's... And why do you describe this as being an as-applied case and insist that it's not a facial challenge? I've been puzzled by that all along. Okay, Your Honor. We believe that we meet both tests. But we believe that this is an as-applied challenge because the District Court made two particular findings. First, that this is both highly radioactive waste and the result of reprocessing. And that this order will apply to the 239 tanks in the three states around the country. And that this order has a specific application to those tanks. So that's why we see it as an as-applied challenge. We also... Beneath the District Court's ruling, the facial challenge test is also met because there is no potential opportunity for the WEIR criteria, I'm sorry, the Waste Incidental to Reprocessing criteria, to be valid when applied to the waste in those tanks that is both highly radioactive and the result of reprocessing. What do you do with the Defense Department Exclusion, Defense Facility Exclusion, Section 8 of the NWPA? Your Honor, that was the second of three points that we'd like to cover today. Your first point, because if you don't get under the Act, and there's no point in talking about any of that other stuff. The order is subject to the Act because the Act directs disposal based on waste classification under Section 101.1.12, the definition of high-level waste, and 101.1.9, the direction Congress gave for disposal of high-level waste, which is emplacement in a geologic repository. And the agency's order directly affects waste classification. Now the agency suggests that the NWPA is not applicable via Section 8A of the Act, which goes to management authority. Your Honor, this is not management authority. This is classification. Let's put it together. Okay. Subject to the provisions of Subsection C of this section, the provisions of this subject will not apply with respect to any atomic energy defense activity or facility used in connection with any such activity. Yes Your Honor. Connectivity in any facility connected with such activity. And then atomic energy defense activity includes defense nuclear waste and materials by-products management. This is 42 U.S.C. 101.1.3. Yes, Your Honor. What's left? The rest of Section 8, Your Honor. And we think the district court gave meaning to the entirety of Section 8 as it understood. The important thing to note. Which? B? C? What are you talking about? B. B, Your Honor. What is needed for you? B2 specifically. Well, let me first address Section 8A. Section 8A, Your Honor, specifically exempted atomic energy defense activities for a very good reason. I mean, first, atomic energy defense activities is defined in the statute. I don't need to know the reason. All I have to see is what Congress said, and that's what they do. And they exempted those facilities to ensure that there would be no interference with nuclear weapons by the waste management and disposal activities that were ongoing at the time that the act was passed. Congress then went on to lay out in Section 8, in Section B, an evaluation by the President and by the agency to first in B1 make a decision whether they would dispose of their high-level waste in a defense-only repository or in a commingled repository, commingled with spent nuclear fuel from commercial production. Then in Subsection B2, and this is as the district court found, the President must make a decision based on the recommendation of that agency. The agency chose to dispose of its high-level waste commingled in that repository. B3, which doesn't apply here, relates to the... What's in B2 that you're pointing to? Well, as... Why don't you just use language? The Secretary shall proceed promptly with arrangement for the use of one or more of the repositories to be developed under Part A of this subchapter. And then, as the district court noted, such arrangements shall include, and this is mandatory statutory language, and it's not merely just a cost allocation. Include is merely just one of the factors. It doesn't say it shall use it. It shall say, you know, this is if they want to use this facility, this is what they shall do. And they chose to use this facility, and the directive that President Reagan signed in 1985 expressly states, and this is found at supplemental excerpts of the Record 138A, that the agency should proceed with plans and actions to dispose of defense waste in a commercial repository. To read Section 8 to allow the agency to merely make the evaluation, an elective exercise would be to nullify the next page of the statute, Section 10121, where state and effective tribe participation in development of the proposed repositories for defense waste. The options the agency had, Your Honors, come down to cite their own defense repository, which is under B3, what would have applied if they'd cited their own defense repository. The agency chose not to go down that road when President Reagan signed his directive in 1985. Or the option that does apply under 8C is to cite with commercial fuel. So, Counsel, it may be slightly off that point, but I'm not sure. I gather that part of your argument was that once this stuff kind of looks like high-level waste, or it's mixed up in some of its high-level waste, that they are prohibited from processing it further to remove its high-level waste characteristic and leave it behind. Suppose the brilliant DOE scientists discovered a way to convert all the high-level waste in their hands to plain water. Or maybe they go to Hogwarts and get a potion. That does it, okay? Yes, Your Honor. Because plain water. It seems to me your argument is, well, they still have to ship the plain water off to the repository because they can't do anything to eliminate its high-level waste character. Are you wrong about that? Yes, Your Honor. That's not our argument. Our argument is the argument of whether and when they can remove the waste from the tanks, treat that waste such that it no longer has fission products in sufficient concentration, and it's in a solid form, just as the district court found. One, that's a question for another day, and that's not the issue before this court. That is the application of the Weir criteria to the waste in these tanks. But if they can remove it, turn it into water, that's harmless. Or, for example, maybe a better, actual more realistic interpretation is something where they remove it and they can separate some portion into a highly radioactive portion that can go to a repository and then a portion that meets low-level waste standards in a concrete block form. That's terrific, but that's not the issue before this court. I'm clear on this. I understood that. You made a couple of references to solid or concrete block. I understand you've drawn that distinction, and that can be done for solid form. But suppose the separation leaves the residue still in liquid form but with the safety of water. Now, like Judge Fernandez, I understood your argument to say things in liquid form were high-level waste, that the statute did not provide for, by Hogwarts or otherwise, conversion or separating out some portion of that to be treated separately. Is that your position? I mean, is liquid really, once it's attached with this label high-level waste, you can't do anything to change the label? We don't believe so, Your Honor. We think the district court was very careful to note in its decision that – and the district court was talking about the waste as it had been poured into the tanks. I mean, the reprocessing waste is essentially an acid bath for spent nuclear fuel that produces this viscous material that's extraordinarily radioactive that was then poured into tanks. The district court made a specific finding that that liquid waste was both highly radioactive and the result of reprocessing. The district court also made a specific finding that there could be reclassification but not for the liquids. And there, the district court was referring to what was in the tanks. Now, if they can remove what's in the tanks, and it does get – let's say it has all the radioactivity removed and it's still in a liquid form, there's nothing barring the agency from putting that liquid – I mean, you can turn a liquid into a solid. I mean, whether you spread it through some sort of mass that would dilute it or – there's nothing that would bar them to spread it into a solid without radioactivity that then could be potentially reclassified. But that's a question for another day. The important point, we think, for the courts – but you are saying if it remains in liquid form, that's not a question for another day. That has to stay classified as high HWL. Well, ultimately, Your Honor, the liquids that the court was referring to, that the district court was referring to, were the liquids and solids in the tanks itself. I mean, this is – think of your cup of coffee in the morning, and that's precisely how the tanks have settled out, where the grounds have settled to the bottom. So the more concentrated radioactivity has settled to the bottom. The important point the district court was going to, and where the order contradicts the plain language of the Act, was the Act has defined high-level waste as highly radioactive material resulting from the reprocessing of spent nuclear fuel. The Act defines disposal in clear terms and placement of high-level waste in a repository. The agency issued the order to govern reclassification of this high-level waste. I mean, if you look at their excerpts of the record expressly in their guidance at ER 251, they allow for reclassification of waste that would otherwise be high-level waste due to the source of its generation or concentration. The agency suggests that the order is lawful because it determines that only low-level waste would remain in a tank. The agency is incorrect. The district court found that high-level waste is both highly radioactive and a result of reprocessing, and that's supported by the record. And the application of these three criteria to that waste would in no way change the nature of the waste. First, waste reclassified, and this goes to the performance objectives point that counsel for the agency just brought up, waste that the department has deemed to be low-level waste, meaning low-level waste requirements, is merely a statement of intent. The district court also found that removal of radionuclides, to the extent technically and economically practical, injects cost considerations and things not found in what Congress clearly stated in the definition of high-level waste. And finally, allowing high-level waste to meet alternative requirements that are wholly undefined ignores the expressed directions of Congress of how to treat this waste. Ultimately, if they can remove this waste and treat it to such that it actually solves some of these problems, that will be great. That is not the issue before this court. Even if they do so in liquid form? Even if they do so in liquid form, but ultimately disposal – well, first, Your Honor, we don't – it's unlikely to be realistic that all the radioactivity would be removed. And one of the baseline criteria for any sort of radioactive waste disposal is to remove the liquids or turn them into a solid form, whether you're talking about low-level waste, transuranic waste, I mean, all the waste you're hearing about today. Even at your low-level waste disposal sites or your muni-hazardous waste dump here in Seattle, the thing you want to avoid is liquids going through the waste because that's where – that's what takes contaminants out and that's what can escape. So the importance here, Your Honor, is reclassification of liquids is barred. Reclassification of solids, ultimately, is not barred. The agency – and I'm going to quickly be going into the State's time. I'm reserving five minutes for the State, so I'm going to try and sum up quickly. Going straight to Judge Clifton's set of questions, the agency ultimately, Your Honor, has no authority to adopt a policy that directly conflicts with its governing statute. With that, I'm going to sit down. Thank you. May it please the Court. My name is David Mears and I appear before you today on behalf of the Amici States. The States have a strong interest in ensuring that the Department of Energy properly and safely disposes of the millions of gallons of highly radioactive material resulting from the reprocessing of spent nuclear fuel in a safe, deep geologic repository. That's what Congress said in the Nuclear Waste Policy Act. Counsel for NRDC has already identified the primary components of the statutory scheme that are relevant, but I'd like to point out two that are of particular interest to the States. The first is in Section 101.3.1 of the statute, sub-A6. This is in the findings and purposes provision, and this provision states that state and public participation in the planning and development of repositories is essential in order to promote public confidence in the safety of disposal of such waste. And specifically implementing that finding and purpose of the statute, in Section 101.2.1 of the Act, Congress specifically directs that DOE is to notify and to work with States in the siting of any repository for the disposal of defense activity waste. These provisions don't really have any meaning if the Department of Energy can, through the application of Order 435.1, simply sidestep the Act and treat waste that would otherwise, under the Act, be considered high-level waste as something else and dispose of it, for instance, by leaving it in our States in a state of storage or disposing of it under requirements for low-level waste or transuranic waste. But it clearly can't do that under the exclusion if they want to have a defense facility. I mean, clearly in that situation they can do it. The Defense Department exclusion. The exclusion based in Section 8A. Well, as counsel for NRDC has pointed, that exclusion relates to the so-called activity. I'll read the exact language just to make sure I've got it in front of us. It shall not apply to respect to energy defense activity, and activities defined as management. Management does not include disposal. Disposal is a separately defined term in the statute. It says defense, nuclear waste, and materials byproducts management. I don't know why that does not include disposal. I mean, byproducts are things that are not the main products. Why doesn't that cover exactly the situation? Well, the court could read it that way. But in order to do so, then you have to ignore the Sections 8B, 8C. You have to ignore the reference to Section 101 or 10121 of the statute. Those provisions express reference and linkages between the concept of high-level waste and defense activities. And it's for that reason that the court should find that the statute does apply to high-level waste. Pardon me, defense activity, high-level waste. I mean, getting to one of the issues that Judge Clifton was addressing, I want to be sure that it's the State's position on how the definition applies. If DOE is able to properly treat and solidify the waste that's in the tanks, such that the solids derived from contain concentrations of fission products and less than those sufficient concentrations, then from the State's perspective, that's permissible for DOE to treat that as something other than high-level waste. Now, that doesn't seem to be what the district court said. I was flipping through, and I wish I'd found it a few minutes earlier, but you're the person standing there now, so I'll say that the district court decision on page 10 said in so many words that NWPA does not offer the option of reclassification for liquid waste produced directly in reprocessing, drawing a distinction between liquid and solid. So you're now apparently taking the position on behalf of the States, granted that at least that observation by the district court may have been incorrect. That's correct. We believe that was an unnecessary observation by the court. The court did not need to reach that issue. But to the effect that this court wants to get into how the criteria should be applied, it is our position that the liquids, if treated and properly solidified, may be treated as something other than high-level waste. Really, with the proper application of the definition of high-level waste, DOE has really only two choices with regard to how they manage this waste. Both choices involve the placement in a repository. That's what Congress contemplated. And another hint to this is in Section 10131 of the statute in subsection A7. It discusses placement of the high-level waste in a repository and describes it as an appropriate precaution to be taken to protect public health and the environment for this and future generations. For that reason, the district court's decision to invalidate Order 435.1 was the appropriate decision. It merely affirms longstanding and settled understandings of Federal law. Thank you. Okay. Thank you. First, let me start with Section 8A. I think, Your Honor, it's quite clear from this provision that it takes DOE's activities in managing waste, defense waste, atomic energy defense facilities, out of the scope of the Nuclear Waste Policy Act. The argument that somehow Section B puts back in what Section A takes out simply doesn't make sense. It does not give effect to all provisions. On the contrary, it reads them as in conflict. The provisions, the provision of 8B.2, such arrangements, the arrangements the Secretary is directed to make, shall include the allocation of costs of developing, constructing, and operating this repository, show what Congress had in mind. The repository is to be constructed using funds from something called the Nuclear Waste Fund, set forth in Section 302 of the Nuclear Waste Policy Act. This is a special fund in the Treasury. The repository is not funded out of ordinary tax revenue. It is funded out of a special fund that includes contributions from commercial utilities that own nuclear reactors and also from the government if it is to use the repository. What this is directing the government to do is to pay money into that fund that will be available to pay the government's cost of developing a repository. It is not in any – Section C says that the provisions of the Act apply with respect to any repository not used exclusively for the disposal of high-level – Right. That doesn't – that does not – I don't think anyone is arguing that that somehow countermands Section 8A. All that says is – I would suggest that if you don't have a unique defense-waste-only facility, that the Act does apply. And as this Court said in its earlier decision, what the Nuclear Waste Policy Act deals with is development of repository. Of course, we don't contest that the Nuclear Waste Policy Act applies to the development of a joint repository. But here we're not talking about – the issue in this case is Order 435.1 does not address development of geologic repositories. It addresses the management of defense waste at DOE sites, and that is what Section 8A takes out of the scope of the Nuclear Waste Policy Act. The only way we submit to give effect to all these provisions is the interpretation we've argued for in the brief. First, Section 8A takes out of the scope of the Nuclear Waste Policy Act DOE's decisions with respect to management of defense waste at the DOE sites, at Savannah River, at Ineal, at Hanford. Section 8B provides that if the President elects to forego the development of a separate repository for defense waste, then the government must pay its share of the cost of developing a geologic repository. And finally, Section 8C provides that in the event a joint repository is developed, then the provisions of the Nuclear Waste Policy Act would apply to such a repository, to the various steps and actions DOE must take to develop the repository. But that's not what Order 435.1 is about. So 435.1 is outside the scope of the Nuclear Waste Policy Act. Let me just briefly address the business about solids or the criteria and the claim that we are somehow improperly reclassifying something here. That's not what Order 435.1 is about. I understood NRDC counsel to say that he recognizes that what he calls a reclassification, what the department would call classification, of solid waste, solid waste derived from liquid waste is not barred by the Nuclear Waste Policy Act, even assuming it applies. And that's clearly correct. The language of the definition of high-level radioactive waste defines it as the highly radioactive material resulting from the reprocessing of spent nuclear fuel, including liquid waste produced directly in reprocessing, and any solid material derived from such liquid waste that contains sufficient products in sufficient concentrations. Well, that's what the criteria are directed to determining. Are these concentrations sufficient? It's not about reclassifying anything. It's about making a determination that solid waste, and just so the Court understands, any of the waste the government will dispose of will be disposed of in solid form. That's a basic safety policy that the department has always implemented. That is, it's not going to dispose of any liquids either in the geologic repository, it couldn't do that, or as low-level waste or as transuranic waste. These materials will all be disposed of in solid physical form, and that's what the criteria address. Materials that have been solidified, they may have been solidified long ago by natural processes, but actually what DOE intends to do is to solidify them in various forms. My time has expired, so I probably can't go into that. But basically, let me summarize by saying what we are doing is simply defining what sufficient concentrations are. So even if the Nuclear Waste Policy Act applies, we have the authority to do this. Thank you. Okay. Thank you. In case you're talking, we can't submit it. We are adjourned. All rise. This Court for this session stands adjourned.
judges: Kozinski, Fernandez, Clifton